PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAY MCCORMICK, | ) | |
| | ) | CASE NO. 4:11CV01524 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AIM LEASING COMPANY, INC., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 12.] |

Before the Court is the unopposed motion for Judgment on the Pleadings filed by Defendant AIM Leasing Co., Inc., seeking dismissal of Counts Two and Three of the Amended Complaint. ECF No. 12. The Court has reviewed the motion, responsive briefs and governing law. For the reasons provided below, Defendant's motion is denied in part and granted in part.

## I. Factual and Procedural Background

The genesis of this action is the allegedly wrongful discharge of Plaintiff Ray McCormick from his employment by Defendant AIM Leasing Co., Inc.[1] In the original Complaint (ECF No. 1-1), filed on May 2, 2011, in the Mahoning County Court of Common Pleas, McCormick alleged that in February, 2009, when he was over fifty years of age, he was discharged by AIM from his job as a commercial truck driver despite having competently performed his duties. In Count One, McCormick brought a claim of age discrimination under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. In Count Two, McCormick claimed age discrimination pursuant to Ohio statutory law. Finally, in Count Three, McCormick

---

[1] Defendant states that its correct name is "AIM Integrated Logistics, Inc."

(4:11CV01524)

alleged that his discharge violated Ohio public policy because his previous complaints to AIM about unsafe working conditions were "a factor in the decision to terminate his employment." In his prayer for relief, McCormick sought, *inter alia*, damages, costs and reinstatement.

On July 25, 2011, AIM removed the matter to this Court. ECF No. 1. Subsequently, on September 29, 2011, AIM moved for a partial judgment on the pleadings with respect to Count Three of the Complaint. ECF No. 4. AIM claimed that it was entitled to judgment because (1) McCormick did not cite any provision of law that served as a source of the public policy allegedly violated, and (2) the only source of law that might give rise to a public policy claim is the Ohio Whistleblower Statute, R.C. 4113.52; yet, under the facts alleged, McCormick did not comply with either the 180-day limitations period or the notice and reporting requirements of that statute. ECF No. 4-1. In his opposition brief (ECF No. 7), McCormick expressly disavowed any intention to rely upon the Whistleblower Statute. As to the absence of law cited, McCormick requested leave to amend the Complaint. On April 23, 2012, the Court granted the request, thereby mooting AIM's first partial motion for judgment on the pleadings.

Thereafter, on May 11, 2012, McCormick filed the First Amended Complaint (ECF No. 10), which is identical to the original Complaint except in one respect: Amended Count Three explicitly references the statutory and regulatory sources undergirding McCormick's public policy claim. On May 25, 2012, AIM again moved for a judgment on the pleadings, this time with respect to Counts Two *and* Three. ECF No. 12. According to AIM's supporting memorandum of law (ECF No. 12-1), Count Two, the Ohio age discrimination claim, is barred by the statute of limitations, and Count Three must fail because the sources of law cited therein

2

(4:11CV01524)

do not establish a clear public policy giving rise to a cause of action. This time, McCormick did not file an opposition. AIM's second motion for Judgment on the Pleadings is ripe for review.

## II. Legal Standard

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." The Sixth Circuit applies the same standard to Rule 12(c) motions as to motions to dismiss under Rule 12(b)(6). *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). "'[T]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007) (*quoting Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)). "'To survive a [Rule 12(b)(6)] motion to dismiss, [the complaint] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate School Dist. v. Michigan Dept. Of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true"; *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (*quoting Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)); and the Court "'must construe the complaint in the light most favorable to [the] plaintiff . . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (*quoting*

(4:11CV01524)

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

### III. Discussion

#### A. Count Two - Ohio Age Discrimination Claim

In Count Two of the First Amended Complaint, McCormick alleges that AIM wrongfully discharged him based upon his age in violation of "R.C. 4112.02/4112.99." ECF 10 at 4. He alleges that the discharge occurred in early February, 2009. ECF 10 at 3. AIM contends that McCormick's claim is therefore barred by the 180-day limitations period in R.C. 4112.02 because he did not file the original Complaint until May 2, 2011. ECF No. 12-1 at 5.

A review of Ohio's various statutory remedies addressing age discrimination provides a necessary foundation for the Court's analysis. The scheme set forth in Chapter 4112 of Ohio's Revised Code provides a plaintiff with several choices when pursuing a civil action alleging age discrimination in the employment context. In particular, R.C. 4112.02(A) makes it unlawful "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to . . . any matter directly or indirectly related to employment." An individual who has been aggrieved may pursue "a civil action . . . in any court with jurisdiction for any legal or equitable relief that will effectuate the individual's rights." R.C. 4112.02(N). Alternatively, an individual who is discriminated against on the basis of age may also be able to seek relief under R.C. 4112.14, which, in division (A), provides: "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and

4

(4:11CV01524)

otherwise meets the established requirements of the job and laws pertaining to the relationship between the employer and employee." An individual who is discriminated against in such manner is permitted by R.C. 4112.14(B) to file a civil action, although the range of remedies is more limited than that available under R.C. 4112.02.[2] A plaintiff may not, however, pursue a claim under both R.C. 4112.02 and 4112.14, as pursuing a claim under one statute will necessarily preclude the pursuit of a claim under the other. See R.C. 4112.02(N),[3] 4112.14(B).[4] The two statutes also have different statutes of limitations. A civil action under R.C. 4112.02 must be filed "within one hundred eighty days after the alleged unlawful discriminatory practice occurred . . . ." R.C. 4112.02(N). While there is no limitations period provided in R.C. 4112.14, "Ohio Courts have held that the statute of limitations for age discrimination claims brought under R.C. 4112.14 is six years." *Goodyear v. Waco Holdings, Inc.*, 2009 WL 344993 at *8 (Ohio App.) (*citing Ahern v. Ameritech Corp.*, 137 Ohio App.3d 754, 780, 739 N.E.2d 1184 (2000)).

In addition, a plaintiff may file an age discrimination claim under yet another provision

---

[2] R.C. 4112.14(B) permits a court to provide "reimbursement to the applicant or employee for the costs, including reasonable attorney's fees, of the action, or to reinstate the employee in the employee's former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse the employee for the costs, including reasonable attorney's fees, of the action."

[3] R.C. 4112.02(N) provides in relevant part: "A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code and from filing a charge with the commission under section 4112.05 of the Revised Code."

[4] R.C. 4112.14(B) provides in relevant part that "any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commissioner under section 4112.05 of the Revised Code."

5

(4:11CV01524)

within Chapter 4112.  R.C. 4112.99 provides, in totality: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."  The Ohio Supreme Court has stated that "R.C. 4112.99 provides an independent civil action to seek redress for any form of discrimination identified in the chapter"; *Leininger v. Pioneer National Latex,* 115 Ohio St.3d 311, 318, 875 N.E.2d 36 (2007) (*citing Elek v. Huntington National Bank,* 60 Ohio St.3d 135, 136, 573 N.E.2d 1056 (1991)); and a plaintiff may file an age discrimination claim *solely* under R.C. 4112.99.  *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104, 113, 909 N.E.2d 106 (2009).  In the context of age discrimination, however, R.C. 4112.99 does not substantively add to what has already been provided in Chapter 4112.  "'R.C. 4112.99 functions as a gap-filling provision, establishing civil liability for violations of rights for which no other provisions for civil liability has been made.'" *Id.* at 110 (*quoting Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.2d 281, 292, 638 N.E.2d 991 (1994) (Resnick, J., concurring)).  "Because age-discrimination claims are specifically addressed in R.C. Chapter 4112, it necessarily follows . . . that age-discrimination claims are *not* governed by the general gap-filling provision of R.C. 4112.99.  Rather, they are covered by the statutes in R.C. Chapter 4112 that are specific to age discrimination." *Id.* at 110-11.  Thus, as explained by the Ohio Supreme Court, "when a plaintiff files an age-discrimination claim solely under R.C. 4112.99 . . . the plaintiff need not indicate which specific statutory remedies he or she is pursuing"; *id.* at 113; but the claim "is subject to the substantive provisions of R.C. 4112.02 and 4112.14."  *Id.* at 112.

In support of its second motion, AIM correctly points out that the statute of limitations under R.C. 4112.02 is 180 days.  The Court notes, however, that McCormick does not allege

6

(4:11CV01524)

reliance *solely* upon that statute.  Rather, McCormick alleges that he was wrongfully discharged in violation of "R.C. 4112.02/4112.09."  While the pleading betrays a degree of ambivalence on the part of the pleader, this is tolerated by our rules of practice.  "Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'" *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999); *see* Fed. R. Civ. P. 8(d)(2).  Further, our pleading system "was adopted to focus litigation on the merits of a claim . . . ." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  Here, construing Count Two in the light most favorable to McCormick, as the Court must; *see Albrecht v. Treon*, 617 F.3d at 893; the Court concludes that McCormick did not elect to pursue an age discrimination age under R.C. 4112.02 alone; rather, he chose to pursue such a claim under two alternative theories, R.C. 4112.02 *or* R.C. 4112.99.  Therefore, because AIM did not argue that Count Two is barred by the limitations period applicable to R.C. 4112.99, and, indeed, it did not even identify the applicable limitations period under that statute, AIM cannot prevail on its motion.  The Court, moreover, will refrain from addressing those issues.[5]  See *Martinez-Rivera v. Sanches Ramos*, 498 F.3d 3, 7 (1st Cir. 2007)

---

[5] In fact, these issues pertain to an area of unsettled law in Ohio.  As discussed, the Ohio Supreme Court has held that an age discrimination claim brought under R.C. 4112.99 is subject to the substantive provisions of both R.C. 4112.02 and 4112.14.  It has also stated that "a plaintiff who within 180 days files an age-discrimination claim in common pleas court under R.C. 4112.99 preserves the opportunity to pursue all remedies" delineated by R.C. 4112.02 and 4112.14.  *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d at 113.  Nevertheless, it has declined to elaborate whether such a claim, if filed outside the 180 day limitations period of R.C.

(4:11CV01524)

("'[s]ua sponte dismissals are strong medicine, and should be dispensed sparingly'").

Based on the foregoing, the motion for Judgment on the Pleadings is GRANTED with respect to the portion of Count Two alleging a claim under R.C. 4112.02, and DENIED with respect to the portion of Count Two alleging a claim under R.C. § 4112.99.

**B. Count Three - Violation of Public Policy Claim**

In Count Three, McCormick alleges that the termination of his employment violated Ohio public policy because the discharge was motivated in part by his prior complaints to AIM about "unsafe working conditions," namely, "that AIM regularly required its drivers to drive longer than permitted by law." ECF No. 10 at 3, 5. To demonstrate the sources of the public policy allegedly violated, McCormick cites a number of federal regulations, including 49 C.F.R. §§ 395.3,[6] 395.8[7] and 395.13,[8] as well as R.C. 4511.79(A)[9] and (B).[10] ECF No. 10 at 5. AIM

---

4112.02 but within the 6 year statute of limitations of R.C. 4112.14, would be subject only to the substantive provisions of the latter statute or would even be timely at all. *Id.* at 118.

[6] 49 C.F.R.§ 395.3 provides in relevant part: "(b) No motor carrier shall permit or require a driver of a property-carrying commercial motor vehicle to drive, nor shall any driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, for any period after . . . (1) Having been on duty 60 hours in any period of 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or (2) Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week."

[7] 49 C.F.R. § 395.8 provides in relevant part: "(a) Except for a private motor carrier of passengers (nonbusiness), every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24 hour period using the methods prescribed in either paragraphs (a)(1) or (2) of this section."

[8] 49 C.F.R. § 395.13 provides in relevant part: "(a) Authority to declare drivers Out of Service. Every special agent of the Federal Motor Carrier Safety Administration (as defined in Appendix B to this subchapter) is authorized to declare a driver out of service and to notify the motor carrier of that declaration, upon finding at the time and place of examination that the

8

(4:11CV01524)

asserts, however, that McCormick's citations are little more than generic references to laws that do not squarely address the particular facts alleged. ECF No. 12-1. Therefore, AIM argues that McCormick has not established the existence of a clear public policy supporting his claim.

"The traditional rule in Ohio and elsewhere is that a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages." *Collins v. Rizkana*, 73 Ohio St.3d 65, 68, 652 N.E.2d 653 (1995). A public policy exception to the employment at will doctrine, however, was first recognized by the Ohio Supreme Court in *Greeley v. Miami Valley Maintenance Contracts, Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (1990). In that case, an employee was allegedly discharged by his employer because his wages

---

driver has violated the out of service criteria as set forth in paragraph (b) of this section.

    "(b) Out of service criteria.
        (1) No driver shall drive after being on duty in excess of the maximum periods permitted by this part.
        (2) No driver required to maintain a record of duty under § 395.8 or § 395.15 of this part shall fail to have a record of duty status current on the day of examination and for the prior seven consecutive days."

    [9] R.C. 4511.79(A) provides: "No person shall drive a 'commercial motor vehicle' as defined in section 4506.01 of the Revised Code, or a 'commercial car' or 'commercial tractor,' as defined in section 4501.01 of the Revised Code, while the person's ability or alertness is so impaired by fatigue, illness, or other causes that it is unsafe for the person to drive such vehicle. No driver shall use any drug which would adversely affect the driver's ability or alertness."

    [10] R.C. 4511.79(B) provides: "No owner, as defined in section 4501.01 of the Revised Code, of a 'commercial motor vehicle,' 'commercial car,' or 'commercial tractor,' or a person employing or otherwise directing the driver of such vehicle, shall require or knowingly permit a driver in any such condition described in division (A) of this section to drive such vehicle upon any street or highway."

9

(4:11CV01524)

were subject to a court withholding order to ensure payment of child support. *Id.* at 230. Although an Ohio statute expressly prohibited the employer's action, that statute permitted only for the employer to be fined and did not create any civil remedies for the employee. *Id.* at 232. The *Greeley* court held that under the circumstances "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute," and, consequently, recognized a tort claim for violation of the public policy against discharging an employee on the basis of a withholding order. *Id.* at 234.

Ohio courts now look to a four-prong test to ascertain whether a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule. The elements of a claim of wrongful discharge in violation of public policy are as follows:

> 1. That a clear public policy existed and was manifest in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Dohme v. Durand America, Inc.*, 130 Ohio St.3d 168, 171, 956 N.E.2d 825 (2011) (emphases in original; internal quotations omitted). The clarity and jeopardy elements of the test are issues of law for a court's determination, while the causation and overriding-justification elements are questions for the fact finder. *Id.*

"'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of

10

(4:11CV01524)

statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitution of Ohio and the United States, administrative rules and regulations, and the common law." *Leininger v. Pioneer National Latex*, 115 Ohio St.3d at 313. Furthermore, "to satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation of specific provisions of [law]. A general reference to workplace safety is insufficient to meet the clarity requirement." *Dohme v. Durand America, Inc.*, 130 Ohio St.3d at 173-74. Importantly, the public policy invoked by the plaintiff must also be "applicable to him in [the] matter." *Id.* at 173.

Consequently, Ohio courts have consistently rejected discharge in violation of public policy claims where the demonstrated public policy bears only a passing relationship to the plaintiff's discharge and does not apply directly to the facts of the lawsuit. The following cases are illustrative. In *Strodtbeck v. Lake Hospital System, Inc.*, 2011 WL 1944187 (Ohio App. 11 Dist.), the plaintiff, a hospital technician, alleged that he was discharged because he documented what he believed was the hospital's mistreatment of a patient, and brought that mistreatment to the patient's attention. In support of his discharge in violation of public policy claim, the plaintiff cited Ohio laws prohibiting an employee's discharge for (1) consulting a lawyer or filing a lawsuit against an employer; (2) participating in a criminal investigation into corrupt practices by the employer; (3) testifying unfavorably against the employer; and (4) reporting abuses that occur in nursing homes. *Id.* at *4-*5. The plaintiff, however, did not engage in any of the foregoing activities. *Id.* The court held, therefore, that the plaintiff could not proceed on his claim because "[e]ach public policy cited by [the plaintiff] does not specifically apply to the facts

11

(4:11CV01524)

of this case." *Id.* at *5. Similarly, *Evans v. PHTG, Inc.*, 2002 WL 1401476 (Ohio App. 11 Dist.), involved an employee of a medical practice who was allegedly discharged because she reported to a nurse that she witnessed another employee performing a medical procedure without a license. The employee brought a discharge in violation of public policy claim, on the ground that an Ohio statute makes it a criminal offense to engage in the practice of medicine without a license. *Id.* at *5. The court observed, however, that because the statute "[did] *not* specifically prohibit an employer from terminating an employee who reports the unauthorized practice of medicine/surgery to a supervisor," that statute could not support her claim. *Id.* Finally, *Morris v. Dobbins Nursing Home*, 2011 WL 2449008 (Ohio App. 12 Dist.), involved an employee of a nursing home who was allegedly terminated because she complained to a state investigator that she was required to act as a nurse's aid without officially holding the position, and that the nursing home failed to employ an activities director. The plaintiff in *Morris* alleged that her discharge violated the public policy embodied in numerous federal regulations detailing how a nursing home should be properly managed. *Id.* at *4. Concluding that the regulations "merely provide baseline technical criteria that [the nursing home] had to meet in order to operate the nursing home facility," the court determined that the law cited by the plaintiff did not evidence a clear public policy upon which she could bring a wrongful discharge claim. *Id.*

In the present case, McCormick does not demonstrate a clear public policy forbidding the discharge of employees for making workplace safety complaints. The laws cited by McCormick plainly do not apply to his discharge. 49 C.F.R. § 395.3 regulates the maximum driving time for drivers of property-carrying commercial vehicles. 49 C.F.R. § 395.8 imposes certain record

(4:11CV01524)

keeping requirements upon motor carriers with regard to its drivers. 49 C.F.R. § 395.13 authorizes the Federal Motor Carrier Safety Administration to declare a driver "out of service" if that driver drives in excess of the maximum permitted period or fails to maintain a record of duty status. Finally, R.C. 4511.79(A) and (B) prohibit the operation of a commercial motor vehicle while a driver's ability is impaired. While these laws might constitute a policy favoring the safe operation of commercial vehicles, they do not permit the Court to identify a public policy in Ohio prohibiting the discharge of an employee for making workplace safety complaints.

Furthermore, the Court will not search for sources of public policy that McCormick did not identify, even if they possibly support his claim. The Ohio Supreme Court has imposed a strict, substantive burden on a plaintiff asserting a public policy to identify the law supporting that policy. "Unless the plaintiff asserts a public policy and identifies federal or state constitutional provisions, statutes, regulations, or common law that support the policy, a court may not presume to sua sponte identify the source of that policy. There may be valid reasons for a plaintiff's failure to identify and assert a specific public policy or a specific source of that public policy. [A] [court] may not fill in the blanks on its own motion." *Dohme v. Eurand America, Inc.*, 130 Ohio St.3d at 173. Here, McCormick amended his pleading in order to give notice of the precise sources of law that he intended to rely upon. He also disavowed any intention to rely upon the Ohio Whistleblower Statute, even though that statute may be a valid source of the public policy allegedly violated. The Court will not delve into McCormick's reasons or motivations. Suffice to say, McCormick has not demonstrated a clear public policy applicable to his cause of action in this case.

(4:11CV01524)

Accordingly, AIM's motion for Judgment on the Pleadings is GRANTED with respect to Count Three.

This action will proceed only on McCormick's ADEA claim (Count One) and his age discrimination claim under R.C. 4112.99 (Count Two).

IT IS SO ORDERED.

| | |
|---|---|
| November 19, 2012 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |