PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAY MCCORMICK,                          )
                                        )    CASE NO. 4:11CV01524
            Plaintiff,                  )
                                        )
      v.                                )    JUDGE BENITA Y. PEARSON
                                        )
AIM INTEGRATED LOGISTICS,               )    **MEMORANDUM OF OPINION AND**
                                        )    **ORDER** [Resolving ECF Nos. 28, 44, 46,
            Defendant.                  )    47, 51]


      Defendant AIM Integrated Logistics has filed a motion for summary judgment, ECF No. 28,

and various motions to strike, ECF No. 44, 46, and 51.  Plaintiff Ray McCormick has filed a motion

for the Court to admit certain evidence filed out of rule, ECF No. 47.  The Court has reviewed the

motions, the accompanying supporting memoranda, and the responsive briefs.  For the reasons

provided below, the Court grants Defendant's motion for summary judgment, denies Defendant's

motions to strike, and grants Plaintiff's motion to admit certain evidence.

## I.  Factual and Procedural Background

### A. Factual Background

      This lawsuit alleges unlawful age discrimination in the employment context and is brought

under the aegis of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*,

and "R.C. § 4112.02/§ 4112.99."[1]  From April 29, 2007, to February 23, 2009, Plaintiff was

---

[1] To the extent Plaintiff brought an age discrimination claim under R.C. § 4112.02, the
Court dismissed that claim as untimely.  ECF No. 15 at 8.

(4:11CV01524)

employed by Defendant, a full service truck leasing company.  ECF No. 53 at 1, 3.  Plaintiff was

hired to work as a truck driver dedicated to drive solely for one account, Dietrich Metal Framing

("Dietrich").  ECF No. 53 at 1.  Prior to working for Defendant, Plaintiff was employed by another

trucking company, J. B. Hunt, and had been assigned to that company's account with Dietrich.  ECF

No. 53 at 1.  When J. B. Hunt's contract with Dietrich expired in April, 2007, Dietrich signed a

contract with Defendant, which in turn hired Plaintiff and other J. B. Hunt drivers.  ECF No. 53 at

1-2.

In late 2008, as a consequence of the economic downturn, the winter, and decreased demand

for building products, Dietrich management informed Bruce Berger, Defendant's vice president of

operations, that it needed to downsize its fleet of Defendant's trucks and drivers by three.  ECF Nos.

53 at 2; 32 at 6.  Berger then instructed Colin Szitas, Defendant's regional coordinator, to reduce

Defendant's roster of Dietrich drivers by that number.  ECF No. 53 at 2.  Szitas selected Plaintiff,

age 55, William Hodge, age 54,and Timothy Lytle, age 51, to be laid off from the Dietrich account.

ECF No. 53 at 2.  Szitas testified that there was no formal process for determining whom would be

laid off, and that he selected Plaintiff because of Plaintiff's "attitude problem" and because Dietrich

had made negative comments about Plaintiff in the past.  ECF No. 30 at 33.

On February 21, 2009, Defendant prepared a change-of-status form stating that Plaintiff

would be laid off.  ECF No. 53 at 2.  Nonetheless, according to Szitas, Defendant's "standard

procedure" regarding laid-off drivers was "usually [to] salvage the driver and to find other positions"

if the driver was available and fit Defendant's needs.  ECF No. 30 at 38.  On February 23, 2009,

Plaintiff met with Patricia Durkin, Defendant's human resources manager, and Bob Thibodeau,

2

(4:11CV01524)

Defendant's safety director.  ECF No. 53 at 2-3.  When Durkin told Plaintiff that "there was going to be a layoff from the Dietrich account," Plaintiff became angry, raised his voice, and swore at Durkin and Thibodeau.  ECF No. 53 at 3.  After Plaintiff's outburst, Durkin informed Plaintiff that he could consider his layoff to be a permanent one.  ECF No. 53 at 3.

**B. Procedural Background**

In the first amended complaint, Plaintiff alleges that Defendant's "conduct towards [him] was motivated by his age," that Defendant lacked legitimate nondiscriminatory reasons for firing him, and that Defendant "may also have . . . spared a less qualified younger driver from being laid off." ECF No. 10 at 3.  In the answer, Defendant denied the material allegations of the first amended complaint.  ECF No. 11.

Defendant now moves for summary judgment on the ground that Plaintiff cannot prove that "but for" his age he would not have been laid off.  ECF Nos. 28; 28-1 at 7.  In support of its motion, Defendant filed a memorandum of law, ECF No. 28-1.  Plaintiff filed a brief in opposition,[2] ECF No. 37, to which Defendant filed a reply, ECF No. 43.  This motion is ready for adjudication.

Defendant also moves to strike certain declarations and exhibits submitted by Plaintiff in support of his opposition to the motion for summary judgment, as well as Plaintiff's memorandum of supplemental authorities, which Defendant characterizes as an out-of-rule sur-reply.  ECF Nos. 44, 46, and 51.  Plaintiff moves the Court to admit certain evidence filed out of rule.  ECF No. 47. After reviewing the supporting memoranda and responsive briefs, the Court denies Defendant's

---

[2] Defendant urges the Court to disregard Plaintiff's opposition in its entirety because it was filed one day late.  Defendant's extreme and disproportionate suggested course of action is not well-taken.

3

(4:11CV01524)

motions to strike, and grants Plaintiff's motion to admit certain evidence. The Court denies Defendant's motion to strike Plaintiff's memorandum of supplemental authorities because the authorities identified therein are already mentioned in the summary judgment briefs, which means the Court read them. Therefore, the supplemental pleading neither helps Plaintiff nor prejudices Defendant. With respect to the Court's decisions on the other motions docketed at ECF Nos. 44, 46, and 47, the Court will provide its reasoning, where appropriate, in the substantive discussion of the motion for summary judgment below.

## II. Legal Standard

"Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting* Fed. R. Civ. P. 56(a)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the nonmoving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC*, 697 F.3d 345, 351 (6th Cir. 2012) (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). A court deciding a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Kuhn v. Washtenaw County*, 709 F.3d 612, 620 (6th Cir. 2013). "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)). Moreover, "a mere 'scintilla' of evidence in support of the nonmoving party's position is insufficient to defeat summary

(4:11CV01524)

judgment; rather, the nonmoving party must present evidence upon which a reasonable jury could find in [his or] her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012).

### III.  Discussion

#### A. Age Discrimination in Employment Act ("ADEA")

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).  Importantly, despite Plaintiff's allegation that Defendant's conduct towards him "was motivated by his age"; ECF No. 10 at 3; the ADEA "does 'not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor' in the adverse employment decision." *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 318 (6th Cir. 2012) (*quoting Gross v. FBL Financial Services*, 557 U.S. 167, 174, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)).  Rather, "the ADEA requires discrimination to be *because of* a disability, which means 'but-for' causation." *Id.* (emphasis in original).

#### B. Layoff Decisions

Defendant characterizes this case as involving two separate adverse employment decisions: first, the decision to lay off Plaintiff from the Dietrich account; second, the subsequent decision "to transform [Plaintiff's] layoff with possibility of recall into a permanent discharge" after he began shouting profanities at Durkin.  ECF No. 28-1 at 7.  Plaintiff does not contend that the second decision, made on-the-spot by Durkin, was discriminatory.  In fact, Plaintiff stipulated that he became angry during the meeting in which he received the news that he was laid off, raised his voice, and swore at Durkin and Thibodeau.  ECF No. 53 at 3.  Moreover, Plaintiff testified in his deposition

(4:11CV01524)

that he does not believe Durkin discriminates against employees based on their age.  ECF No. 29 at 139.  Therefore, the Court will focus its inquiry on the first layoff decision made by Szitas.

Preliminarily, the Court rejects Defendant's argument that Plaintiff's discrimination claim with respect to the initial layoff decision must necessarily fail because Plaintiff's outburst during the meeting with Durkin and Thibodeau was "a wholly independent and superseding cause that breaks any chain of causation associated with the earlier layoff decision . . . ."  ECF No. 28-1 at 22.  Defendant claims that Plaintiff *might* have been recalled to another position had he not behaved poorly during the meeting.  ECF No. 28-1 at 7.  Plaintiff's behavior had no impact, however, on the original decision to lay him off from the Dietrich account.  That adverse employment decision had been made prior to the meeting.  Therefore, Plaintiff's conduct at the meeting does not defeat his age discrimination claim with respect to the initial layoff decision.  If anything, Defendant's argument goes only to the amount of damages Plaintiff may recover if he prevails on his discrimination claim.[3]

### C. Circumstantial Evidence - Burden Shifting Analysis

Proceeding to Szitas' decision to lay Plaintiff off from the Dietrich account, "[a] plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence."  *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009).  Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination occurred.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).  Because Plaintiff does not present direct evidence of unlawful age

---

[3] As to damages, the record shows no certainty that Plaintiff would have continued in his employment with Defendant had he behaved differently.  Even if he had subsequently been offered, and had accepted, a recall position, there is no evidence that the terms of conditions of his employment, including compensation, would have been the same or comparable.

6

(4:11CV01524)

discrimination, both parties frame this action as one based on entirely on circumstantial evidence.

In order to establish a claim of age discrimination claim based on circumstantial evidence, Plaintiff must satisfy the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as modified for workforce reduction cases. *Bender v. Hecht's Department Stores*, 455 F.3d 612, 620 (6th Cir. 2006), *cert. denied*, 550 U.S. 904, 127 S. Ct. 2100, 167 L. Ed. 2d 814 (2007).  According to this analysis, Plaintiff must first establish a *prima facie* case of age discrimination.  *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004).  Typically, this would require Plaintiff to show that (1) he was a member of a protected age class; (2) he was discharged; (3) he was qualified for the position that he held; and (4) he was replaced by a younger worker.  *Id*.  As explained by the United States Supreme Court, a *prima facie* case under *McDonnell Douglas* raises an inference of discrimination "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978).  In workforce reduction cases, however, "the fourth prong is modified so that the plaintiff must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'"  *Rowan*, at 547 (*quoting Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 350 (6th Cir. 1998).  This is because in workforce reduction cases the plaintiff must establish something more in order to create the legally mandatory, rebuttable presumption of discrimination for which the *prima facie* test was designed:

> When work force reductions by the employer are a factor in the decision, 'the most common legitimate reasons' for the discharge are the work force reductions.  By

7

(4:11CV01524)

showing the other elements of a *McDonnell Douglas* case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a prima facie case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.

*Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 n.7 and 1465 (6th Cir. 1990).

If Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Rowan*, 360 F.3d at 547. If Defendant meets this burden, the burden shifts back to Plaintiff, who must establish that the legitimate reason offered by Defendant was merely a pretext for the adverse decision that was actually caused by an unlawful bias against age. *Id.* The burden of producing evidence of pretext "essentially merges" with the burden of persuasion. *Gragg v. Somerset Technical College*, 373 F.3d 763, 768 (6th Cir. 2004). The burden of persuasion remains at all times on Plaintiff to demonstrate by a preponderance of the evidence that age was the "but-for" cause of the adverse employment decision. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010); *see Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

**D. *Prima Facie* Case**

Defendant argues that it is entitled to summary judgment because Plaintiff cannot demonstrate a *prima facie* case of unlawful age discrimination. ECF No. 28-1 at 16. Defendant does not contend that Plaintiff fails to meet the first three *prima facie* elements. ECF No. 28-1 at 16. Rather, Defendant asserts that Plaintiff does not produce evidence of the final element, that is, "additional direct, circumstantial, or statistical evidence tending to indicate that the employer

(4:11CV01524)

singled out the plaintiff for discharge for impermissible reasons." ECF No. 28-1 at 16.

Plaintiff claims that the final element is satisfied. In particular, Plaintiff points to evidence that purportedly shows: (1) Defendant's retention of younger drivers after the workforce reduction; (2) ageist remarks made by Szitas to Plaintiff and another driver; (3) Plaintiff's superior qualifications in comparison with the younger drivers who were retained; and (4) Szitas' "subjective" and "irrational" decision-making in selecting drivers for layoff. ECF No. 37 at 8-13.

### 1. Retention of Younger Drivers

Plaintiff first argues that Defendant's retention of numerous drivers who were "significantly younger" than Plaintiff supports an inference of age discrimination. ECF No. 37 at 8. As mentioned earlier, Szitas selected Plaintiff (age 55), Hodge (age 54), and Lytle (age 51) for layoff as a result of the downsizing of the Dietrich account. It is undisputed that Szitas chose to retain seven drivers: William Grove (age 54); Edward Davis (age 49); Victor Nolen (age 47); Rodney Powell (age 43); Gary Campbell (age 40); Marvin Burggraf (age 38); and Dwight Smith (age 37). ECF No. 53 at 2. According to Plaintiff, drivers age 50 and above had a 75% chance of being discharged, while drivers younger than 50 had a 0% chance of being laid off. ECF No. 37 at 9 n.8.

In workforce reduction cases, "the decision to discharge a qualified, older employee is not inherently suspicious" because "[t]he decision is readily explainable in terms of the employer's economic situation." *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 896 (6th Cir. 1997). Consistent with this principle, the Sixth Circuit has recognized that in workforce reduction cases "the fact of an age differential" is insufficient for a *prima facie* case under the ADEA. *Schoonmaker*, 595 F.3d at 267. In *Schoonmaker*, the plaintiff argued that because her employer

(4:11CV01524)

selected the two oldest bindery workers (including the plaintiff) for the workforce reduction, but retained a younger employee, there was enough evidence to satisfy the fourth *prima facie* element. *Id*. at 265.  The *Schoonmaker* court, citing a series of Sixth Circuit cases, rejected this claim and held that the plaintiff had "shown nothing more than 'the fact of an age differential.'" *Id.*; *see, e.g., LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984) (mere showing that younger department head was retained and plaintiff, also a department head, was laid off, was insufficient to state *prima facie* case); *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 (6th Cir. 1980) ("[i]f plaintiff's case-in-chief is viewed as satisfying the requirements for a prima facie case of age discrimination, then every employer who terminates an employee between 40 and 70 years of age under any circumstances, will carry an automatic burden to justify the termination"); *Adams v. Proto Plastics, Inc.*, 151 Fed. Appx. 468,  470 (6th Cir. 2005) (that "substantially younger" employees in comparable positions were retained after workforce reduction was insufficient for *prima facie* case).

In addition, "[f]or statistics to be valid and helpful in a discrimination case, 'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987) (*quoting Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)).  Panels of the Sixth Circuit have recognized that "small statistical samples provide little or no probative force to show discrimination." *Id.* at 943 n.7; *see Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 524 (6th Cir. 1997) (sample size of 13 too small); *Conley v. U.S. Bank Nat'l Ass'n*, 211 Fed. Appx. 402, 407 (6th Cir. 2006) (sample size of 10 too small); *Williams v. Tyco Elec. Corp.*, 161 Fed. Appx. 526, 535

10

(6th Cir. 2006) (sample size of 20 too small).

Plaintiff attempts to make a *prima facie* case of age discrimination by pointing out that Szitas spared drivers who were "significantly younger" than Plaintiff from the effects of downsizing. Here, as in *Schoonmaker*, this argument alludes to nothing more than evidence of the fact of an age differential, which is not inherently suspicious in workforce reduction cases. Plaintiff claims that his evidence is bolstered by the fact that the two other drivers who were laid off were, like Plaintiff, in their 50s.[4] Even so, Plaintiff's evidence is weaker than that of the *Schoonmaker* plaintiff in one significant respect: Plaintiff cannot show that his employer selected the *oldest* employees for layoff. Grove, age 54, was retained even though he was older than Lytle, age 51, who was let go. Moreover, Grove, who was just one year younger than Plaintiff, as well as Davis (age 49) and Nolen (age 47), were not "significantly younger" than Plaintiff, yet, they were retained. Finally, Plaintiff's statistical analysis has little probative value. The small sample size offered–three layoffs from a sample of ten drivers where the layoffs did not consist of the oldest drivers in the group–is insufficiently probative of discrimination in the workforce reduction context.

*2. Ageist Remarks*

According to Plaintiff, Szitas' once said to him and another driver that truck driving was a "young man's game." ECF No. 29 at 75. Plaintiff claims that Szitas' "biased" statement is probative of age discrimination. ECF No. 37 at 12.

"Age-related comments referring directly to the worker may support an inference of age

---

[4] Little is offered in evidence about these two drivers apart from their age and the fact that they were laid off as a result of the downsizing of the Dietrich account.

(4:11CV01524)

discrimination." *Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993).  Nonetheless, "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* (quotations omitted).  This is particularly true when the comments are temporally distant.  *Id.* at 1026 (statements made eight months before layoff "were made too long before the layoff to have influenced the termination decision"); *see Rosso v. A. I. Root Co.*, 97 Fed. Appx. 517, 520 (6th Cir. 2004) (age-related comments made six and one-half months before discharge were "too isolated and ambiguous" to create inference of discrimination); *Kahl v. The Mueller Co.*, No. 98-1176, 1999 WL 196556 at *4 (6th Cir. 1999) (comment made by supervisor eight months before termination deemed temporally distant).

In the present case, Plaintiff testified that Szitas made the comment six months to one year before he was discharged.  ECF No. 29 at 75.  Plaintiff testified that he and another driver were in the parking lot after having finished loading or unloading, and Szitas "came out there and was talking [them]."  ECF No. 29 at 74.  Plaintiff could not recall the details of the conversation, and could not describe the context except to say that they were "[j]ust talking about trucking in general."  ECF No. 29 at 75-77.  Other than Szitas' remark, Plaintiff could not think of another comment made by an employee of Defendant that he considered to be discriminatory based on age.  ECF No. 29 at 79.

The remark purportedly made by Szitas could have a number of non-discriminatory meanings, depending on the context of the conversation.  Plaintiff could not recall, however, the details of the conversation except that they were talking about trucking in general.  Moreover, that remark was the only one that Plaintiff could identify as allegedly discriminatory.  Finally, it was

12

(4:11CV01524)

made sixth months to one year prior to Plaintiff's layoff.  Consequently, the "young man's game" comment is too isolated, ambiguous, and temporally removed to provide an inference of age discrimination.

### 3. Plaintiff's "Superior" Qualifications

Plaintiff claims that his qualifications were "superior" than that of the younger drivers who survived the layoff.  ECF No. 37 at 9.  Plaintiff grounds this argument on several factors: (1) number of years driving; (2) seniority; (3) disciplinary history; and (4) driving record.  ECF No. 37 at 9.[5]

Plaintiff presents evidence that he had eighteen years of experience as a truck driver at the time he was laid off.  ECF No. 35-10 at 2.  In comparison, the experience of the retained drivers ranged from nearly eight years to seventeen years.  *See* ECF Nos. 37 at 5; 35-3 at 7.  This comparison does not show that Plaintiff was a superior driver to *any* of the drivers who were not laid off.  The record shows that each of the retained drivers had significant driving experience.  Moreover, while driving experience is relevant, it is meaningful only up to a point.  The least experienced of the retained drivers had nearly eight years of experience, an ample amount.  ECF No. 35-3 at 7.  When compared with Plaintiff's experience, the disparity fails to show that Plaintiff was better qualified to work as a truck driver than even this particular driver.

Plaintiff also argues that his seniority demonstrates his better credentials.  The Court is not

---

[5] The evidence presented by Plaintiff is culled from his personnel records and that of the drivers who were not laid off by Defendant.  The Court will admit this evidence over Defendant's objections.  Plaintiff has shown that the records are true and accurate copies of documents kept in Defendant's files; *see* ECF No. 43 at 9; and the records do not exhibit any indications of unreliability that would persuade the Court to exclude them from this proceeding.

(4:11CV01524)

persuaded. Plaintiff had been with Defendant for less than two years before he was let go. Employment records show that Plaintiff had, in fact, equal or less seniority than at least four of the drivers who were not laid off: Campbell, Davis, Nolen, and Powell.[6]  *See* ECF Nos. 35-3; 35-4; 35-5; 35-6.  Moreover, Plaintiff had more seniority in relation to Burggraf and Smith by less than one year.  ECF Nos. 35-2; 35-7.  Plaintiff fails to explain how his "seniority" under these circumstances, especially where all of the drivers were experienced, demonstrates his superior qualifications.

Plaintiff argues that he had less disciplinary problems than the drivers who were not laid off. Plaintiff overstates his argument.  Plaintiff's personnel records indicates that, since being hired by Defendant, he received a warning and was placed on probation for six months for falsifying driving logs.  ECF No. 35-10 at 7.  Plaintiff also received a verbal caution for failing to obey a traffic order. ECF No. 35-10 at 8.  Plaintiff's disciplinary history is no better than that of Campbell, who had no warnings or verbal cautions from Defendant in his personnel file,[7] or Davis, who received one warning for being rude to a coworker.  ECF No. 35-4 at 9.

While Plaintiff is able to show that several other drivers had received more warnings in their personnel file and had accumulated more traffic infractions; *see* ECF Nos. 35-2; 35-5; 35-6; 35-7; this evidence, while not irrelevant, represents just one possible factor in a constellation of factors

---

[6] Grove's employment records were not provided to the Court, although the parties stipulated that he was 54 years old and was not laid off as a consequence of the downsizing. ECF No. 53 at 2.

[7] Plaintiff disingenuously characterizes a letter in Davis' personnel file as a "warning" from Defendant.  *See* ECF No. 37 at 5.  To the contrary, the letter states that Davis' trailer had two brakes out of adjustment but that it was not a "driver-detectable defect."  ECF No. 35-3 at 8. The letter provided instructions as to what to do if defects are found in the future.  At no point did the letter state that Davis was being warned.

(4:11CV01524)

involved in the calculus of assessing whether one driver is preferable to another.  Szitas testified that he did not consider drivers' personnel files and safety records in making layoff decisions unless "there was an individual sticking out with a bad safety record," and "there was nothing that was sticking out" to him when he made the layoff decisions in the present case.  ECF No. 30 at 29, 41-44.  Plaintiff's reliance on this factor to the exclusion of other relevant factors fails to show that he was a better qualified and more desirable employee than the drivers who were not laid off.

### 4. Szitas' "Subjective" and "Irrational" Decision-making

Plaintiff contends that, in making the layoff decisions, Szitas did not use objective criteria, engage in a formal decision-making process, or consult drivers' personnel files and safety records.  ECF No. 37 at 10.

An employer is free to use whatever evaluation process it wants so long as it is not discriminatory.  *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).  There does not exist an inference of age discrimination merely because the employer's evaluation process was "haphazard."  *Skelton v. Sara Lee Corp.*, 249 Fed. Appx. 450, 462 (6th Cir. 2007).  "That [the employer] made unwise business judgments or that it used a faulty evaluation system does not support the inference that [it] discriminated on the basis of age."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000).

Szitas acknowledged that he did not engage in a formal decision-making process.  He also acknowledged that he did not consider drivers' personnel files unless somebody had an especially bad safety record that stuck out to him.  Instead, he testified that the layoff decision was based on a determination of what was "the best fit for the customer at that moment."  ECF No. 30 at 33.

15

(4:11CV01524)

Szitas' decision to weigh customer satisfaction above other factors, including driving records, does not create an inference of unlawful discrimination.

Plaintiff also argues that Szitas' decision to release Plaintiff was "irrational" in light of the driving histories of other drivers who were retained. ECF No. 37 at 10-11. In particular, Plaintiff asserts that: (1) Powell had a history of citations and had been involved in a driving accident[8]; (2) Davis had received a warning for being rude to a coworker; (3) Smith was on probation at the time of the layoffs; and (4) Nolen had a "poor" driving record. ECF No. 37 at 11.

Plaintiff's evidence does not show that Szitas' decision-making was irrational or discriminatory. Although Powell had been involved in a driving accident, Plaintiff had been involved in an accident, as well, in 2005.[9] ECF No. 39-1 at 1. While Davis had received a warning for rudeness, Plaintiff had also been warned and been placed on probation for falsifying driving logs. ECF No. 35-10 at 7. Smith had been warned for causing "minor damage" to a railing, and had been placed on probation for accumulating moving violations. ECF No. 35-7 at 9. As mentioned, however, Plaintiff had also previously been involved in an accident, received a warning, and been placed on probation. True, Nolen's personnel file discloses five traffic infractions between June, 2004, and July, 2006. ECF No. 35-5 at 12. Notably, he received three of those infractions prior to being hired by Defendant, which corroborates Szitas' testimony that a driver's safety record is not the most important consideration in the determination of the driver's value to

---

[8] Plaintiff's claim that Powell caused $3,200 in damages to Dietrich's property as a result of the accident is not supported by the record. ECF No. 37 at 11; *see* ECF No. 35-6 at 9.

[9] The Court permits the filing of Plaintiff's declaration, which mentions this accident. That the executed declaration was filed three days after it was due did not prejudice Defendant.

(4:11CV01524)

the business.  Furthermore, Nolen had no infractions in 2007, 2008, and, as of the date when Plaintiff was discharged, in 2009.  ECF No. 35-5 at 12.  Finally, as discussed, Plaintiff's reliance on driving records to show his superiority to other drivers is flawed.  Other factors are relevant, and arguably, more relevant.  Indeed, Szitas testified that the needs of the customer were of greatest importance to him.  ECF No. 30 at 33.

Based on the foregoing, the Court concludes that Plaintiff does not submit additional evidence that "the employer singled out the plaintiff for discharge for impermissible reasons." Therefore, Plaintiff does not satisfy all of the *prima facie* requirements for a claim of age-discrimination under the ADEA.  For this reason, Defendant is entitled to summary judgment. Defendant is entitled to summary judgment for another reason.  As will be shown below, even if Plaintiff had been able to make out a *prima facie* case, he would not be able to prove that Defendant's proffered rationale for discharging him was a pretext for unlawful discrimination.

### E.  The Pretext Analysis

Defendant asserts that Plaintiff was chosen for layoff because Defendant had received negative feedback about Plaintiff's attitude from Dietrich, the very account for which Plaintiff was hired to drive.  ECF No. 28-1 at 19.  Szitas testified that when he and Bill Ponko, Dietrich's corporate traffic manager, discussed the downsizing of the Dietrich account, Ponko expressed his preference to Szitas about "who[m] he would like to see be laid off."  ECF No. 30 at 9.  Although Szitas could not "exactly recall the details of the conversation," he testified that "[o]ne driver did stick out in the conversation, and that was [Plaintiff]."  ECF No. 30 at 9.  Szitas also testified that, several months prior to that conversation, Ponko had communicated to Szitas that he was

17

(4:11CV01524)

"bothered" that Plaintiff was "spouting off" to others that the only route he will drive for Defendant while assigned to the Dietrich account is the route to Joliet, Illinois.  ECF No. 30 at 11.

The record contains evidence of correspondence between Ponko, Szitas, and other employees of Defendant that corroborates Szitas' testimony and provides context at to Ponko's concerns about Plaintiff.  In February, 2008, Ponko complained to Deanne Fee,[10] Plaintiff's supervisor at the time, that Plaintiff and another driver, Al Baumgartner,[11] were monopolizing Dietrich routes.  ECF No. 45-1 at 1.  Ponko also complained that Plaintiff had told one or more Dietrich employees that he would only drive Dietrich freight to Joliet, Illinois.  ECF No. 45-1 at 1. Fee discussed Ponko's complaint with Szitas, and they mutually decided that Plaintiff would continue to drive the Joliet route.  ECF No. 45-1 at 1.  Fee explained that this arrangement enabled Defendant to ensure that its drivers complied with the "hours of service" requirements mandated by the United States Department of Transportation.  ECF No. 45-1 at 1.  Then, in March, 2008, Ponko emailed Fee, Szitas, and Berger, and again expressed his displeasure that Plaintiff had been "boasting at our West plant that 'he doesn't go anywhere but Joliet' . . . ."  ECF No. 36-1.  Ponko also voiced his concern that the frequency in which Plaintiff drove to Joliet and in which

---

[10] The Court permits Plaintiff to submit Fee's declaration and the exhibits attached thereto.  Defendant is not without blame for the procedural errors attendant to the filing of this declaration.  Although Fee was not disclosed to Defendant as a witness, her relevance as a witness was not apparent to Plaintiff's counsel until he received certain production from Defendant *after* the close of discovery.  Moreover, Plaintiff's late filing of Fee's declaration resulted from an obvious administrative error in which Plaintiff mistakenly believed that he had filed the declaration at an earlier date.  As this error was obvious, *see* ECF No. 36, Defendant could have, in good faith, alerted Plaintiff to the error, but, perhaps strategically, elected not to.

[11] Al Baumgartner was fired by Defendant six months to one year before Plaintiff was laid off.  ECF No. 29 at 73, 78.

(4:11CV01524)

Baumgartner, drove to Baltimore, risked "rebellion" and "unrest" from other drivers. ECF No. 36-1. In response to Ponko's second complaint, Szitas changed Plaintiff's route so that he drove to Joliet with less frequency. ECF No. 45-1 at 1. Nonetheless, Szitas continued to assign Plaintff to the Joliet route on a regularly basis through the spring of 2008. ECF No. 45-1 at 1.

To demonstrate pretext, Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendant's explanation of why it selected Plaintiff for layoff. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "[A] plaintiff can establish pretext by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the [discharge], or (3) that they were insufficient to motivate discharge." *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quotations omitted).

Plaintiff strives to show that Szitas' consideration of Ponko's preferences was a pretext for unlawful discrimination by arguing that Ponko's complaint was not "as big of a deal as [Defendant] is now trying to make it appear." ECF No. 37 at 16. Plaintiff argues that Ponko first made his complaint about Plaintiff in February, 2008, and Defendant did nothing because Szitas and Fee believed that assigning Plaintiff to the Joliet route best served Defendant's business needs. ECF No. 37 at 14. Even after Ponko made his second complaint about Plaintiff, Szitas continued to regularly assign Plaintiff the Joliet route until after the spring of 2008. ECF No. 37 at 14. According to Plaintiff, this behavior proves that Ponko's complaints were "not serious enough to Szitas to motivate the layoff." ECF No. 37 at 14-15. Furthermore, Plaintiff maintains that he no longer drove the Joliet route by the time he was discharged, which "directly contradicts [Defendant's] entire justification for cutting him loose." ECF No. 37 at 15.

19

(4:11CV01524)

Plaintiff fails to demonstrate that Defendant's stated justification for laying him off was pretextual.  First, by changing Planitiff's route and making him drive to Joliet with less frequency, Szitas showed that he did take Ponko's complaints seriously.  Second, although Ponko's complaints about Plaintiff's behavior and attitude may have been insufficient to justify *firing* him, they were more than adequate to warrant letting Plaintiff go as a result of the workforce reduction, in which Szitas was *forced* to lay drivers off.  After all, despite the decreased business, Dietrich remained a valued customer whose business and preferences Defendant had to take seriously.  Finally, that Plaintiff no longer drove the Joliet route by the time he was discharged has little relevance to the analysis.  Plaintiff's employment was tied to the Dietrich account, and Dietrich management expressly informed Defendant that it no longer wanted Plaintiff on board.

Although Plaintiff maintains that he did not do what Ponko accused him of doing, this does not create an issue of fact as to whether Ponko actually complained to Defendant about Plaintiff's behavior and attitude.  It is undisputed that Ponko complained about Plaintiff more than once.  The evidence also shows that Ponko expressed a preference that Plaintiff be one of the drivers let go.  Even if Ponko's complaints were not included in Plaintiff's personnel file, and even if Defendant responded to an interrogatory stating that it was not "currently" aware of complaints "about Plaintiff or his work performance"; ECF No. 37-2 at 7; no genuine issues of material fact exist for trial.

Nor does the evidence submitted by Plaintiff in support of his *prima facie* case create an issue of fact with respect to pretext.  Although Plaintiff relies heavily on evidence of his purportedly "superior" qualifications, "in the case in which there is little or no other probative evidence of discrimination, the rejected [employee's] qualifications must be so significantly better than the

20

(4:11CV01524)

[retained employee's] qualifications that no reasonable employer would have chosen the latter . . . over the former." *Bender*, 455 F.3d at 627. The record, which contains little or no evidence of discrimination, does not show that Plaintiff's credentials were "so significantly better." For the same reasons why this evidence, in conjunction with the other evidence proffered, cannot satisfy Plaintiff's *prima facie* case, they fail to create a genuine issue of material fact as to whether Defendant's stated reasons for letting him go are pretextual.

For the foregoing reasons, the Court grants summary judgment in favor of Defendant with respect to the ADEA claim.

**F. State Age Discrimination Claim Under R.C. § 4112.99**

For the same reasons that Defendant is entitled to summary judgment on Plaintiff's federal age discrimination claim, Defendant is entitled to summary judgment on the state age discrimination claim. Defendant is also entitled to summary judgment on the state claim because it is untimely.

R.C. § 4112.99 does not substantively add to Chapter 4112; rather, it functions as a gap-filling provision. *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104, 110, 909 N.E.2d 106 (2009). When a plaintiff files an age discrimination claim under R.C. § 4112.99, the claim is subject to the substantive provisions of the other discrimination sections within Chapter 4112, namely, R.C. §§ 4112.02 and 4112.14. *Id.* at 112. A civil action under R.C. § 4112.02 must be filed "within one hundred eighty days after the alleged unlawful discriminatory practice occurred . . . ." R.C. § 4112.02(N). Ohio courts have held that the statute of limitations for age discrimination claims under R.C. § 4112.14 is six years. *Goodyear v. Waco Holdings, Inc.*, No. 91432, 2009 WL 344993 at *8 (Ohio App. 8 Dist. February 12, 2009).

21

(4:11CV01524)

As previously determined by the Court, this lawsuit was filed outside of the 180-day limitations period for R.C. § 4112.02. ECF No. 15 at 4-8. Although the Court dismissed Plaintiff's R.C. § 4112.02 claim, it spared the R.C. § 4112.99 claim from dismissal because, construing the pleadings in the light most favorable to Plaintiff, it was unclear at that time whether Plaintiff also wishes to assert a discrimination claim beyond the substantive provisions of R.C. § 4112.02. Plaintiff makes clear in his opposition brief, however, that he does not. ECF No. 37 at 7. Plaintiff explicitly states that his state age discrimination claim is governed by R.C. § 4112.02. ECF No. 37 at 7. Plaintiff also does not dispute that his state claim is time-barred.

Defendant is therefore entitled to summary judgment with respect to Plaintiff's age discrimination claim under R.C. § 4112.99.

### IV. Conclusion

The Court therefore grants Defendant's motion for summary judgment in its entirety.


IT IS SO ORDERED.

  October 25, 2013                             /s/ Benita Y. Pearson                
Date                                          Benita Y. Pearson
                                              United States District Judge

22